

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-14-00002-CV |
| In the Matter of | § | |
| | | Appeal from the |
| C.J.B., | § | |
| | | County Court |
| A Juvenile. | § | |
| | | of Crane County, Texas |
| | § | |
| | | (TC# 364) |
| | § | |
| | § | |

**O P I N I O N**

Appellant C.J.B., a minor, pleaded true to two separate counts of delinquency at separate times: a misdemeanor offense (making a terrorist threat against a public servant, TEX.PENAL CODE ANN. § 22.07(c)(2)(West 2011)) and a felony offense (assault on a public servant, TEX.PENAL CODE ANN. §§ 22.01(a)(1), (b)(1)(West Supp. 2014)). The trial court placed C.J.B. on supervision and ordered treatment. After Appellant failed to complete treatment, the State moved to revoke supervision for both charges and requested he be committed to the Texas Juvenile Justice Department. In a consolidated hearing, the trial court granted the request and ordered him incarcerated at TJJD.[1] C.J.B. appealed. In this cause number, we address the trial

---

[1] The trial court issued two judgments ordering Appellant incarcerated at TJJD. Each judgment corresponded with the original underlying charges to which Appellant pleaded true.

court's ability to sentence Appellant to TJJD with respect to the felony charge.[2]

Although the State presented multiple improper grounds for revocation, because we conclude it presented one proper ground supported by legally and factually sufficient evidence, we affirm the trial court's order.

## BACKGROUND
### *Factual History*

Following his plea of true to the two charges, the trial court placed Appellant on probation for a year and ordered him to complete a treatment program within six months at the Hector Garza Residential Treatment Center, a non-secured juvenile services center focused on mental health issues in San Antonio, Texas. While there, Appellant ultimately failed to progress through the program as required, and several witnesses testified as to various instances of rule violations and angry outbursts.

Mr. Scott,[3] a youth development leader at the Center, testified that Appellant made several sexual comments in the shower and engaged in one instance of consensual sexual conduct with his roommate, all of which constituted violations of the Center's policies. On June 16, 2013, Appellant exhibited "violent, physical, aggressive behavior" and raised a fist toward Scott. Appellant had to be physically restrained. Scott further testified that Appellant frequently would get "very enraged" over unmet personal expectations and comments from other residents.

Walton Cotton, a youth development specialist, testified that Appellant had a consistent pattern of physically and verbally aggressive behavior, as well as self-harming behavior such as

---

[2] In Cause No. 08-14-00001-CV (trial court no. 363), we concluded that the trial court lacked the ability to commit Appellant to TJJD for probation violation for a misdemeanor offense.

[3] Scott did not give his first name during trial testimony, and neither the trial court nor the parties ever prompted him to give it.

banging his head against desks. Appellant also made several threats to people while at the Center, including a threat to rape King's wife. Troy Young, another youth development specialist, testified that on August 7, 2013, Appellant had an angry outburst after a conflict with his roommates. Appellant went to a corner of the room and began banging his head against the wall. Young attempted to de-escalate the situation and stop Appellant from harming himself. Appellant raised a fist to Young before he was restrained.

Appellant's therapist Gay Hughes testified that she worked with him for four out of six months, and that Appellant initially participated in therapy, but stopped participating in the program in June 2013, after his mother told him she would not let him live with her after he left the Center. He also raised a first to Hughes during a session.[4] Hughes further testified that Appellant reported having "blackouts" at the Center, which she defined medically as "the excretion of adrenal fluid from the adrenal gland that goes through the neurological pathways so quickly that the impact of that will cause a child or a person to lose memory of what occurred at the moment . . . ." Hughes explained that aggressive behavior can appear during these adrenal blackouts, and that while there are certain medications that can treat this condition, she did not recall whether Appellant received these medications.

### *Procedural History*

The State petitioned the trial court to modify Appellant's disposition on September 13, 2013, alleging that Appellant's outbursts, rule-breaking, and failure to comply with treatment all justified probation revocation and commitment to TJJD. The State also maintained that Appellant should be committed to TJJD because his parents failed to comply with various conditions in the disposition order. Following a hearing, the trial court granted the State's motion and sentenced Appellant to TJJD. He appealed.

---

[4] None of the witnesses testified that Appellant actually ever struck anyone at the Center.

**DISCUSSION**

Appellant contends the trial court erred in revoking his probation for three reasons. In Issue One, Appellant maintains the trial court could not revoke Appellant's probation based on his father's violations of the disposition order. Second, in Issue Two, Appellant alleges the State failed to adduce any evidence that he intentionally failed to pay his probation fees, rendering revocation on that point improper. Finally, Appellant concedes that the evidence underpinning the finding that he violated the disposition order by discontinuing treatment was legally and factually sufficient, but argues in Issue Three that the trial court abused its discretion in ordering his incarceration because the commitment was not in Appellant's best interest, reasonable efforts were not made to prevent or eliminate the need to remove Appellant from his home, and his home environment could provide adequate care and supervision.

The State in turn concedes that C.J.B.'s father's failure to abide by the disposition order did not constitute a proper ground to revoke C.J.B.'s probation. The proper vehicle to challenge parental non-compliance with a disposition order is a Chapter 61 motion to enforce. *See* TEX.FAM.CODE ANN. § 61.001 *et seq.* (West 2014). The State also concedes that there is insufficient evidence to show that C.J.B.'s failure to pay his probation fees was intentional and thus, that ground also could not have justified revocation. *See Stanfield v. State*, 718 S.W.2d 734, 737-38 (Tex.Crim.App. 1986)(State must prove failure to pay fee was intentional). As such, we sustain Issue One and Two.

However, the State maintains that C.J.B.'s commitment should stand because there was legally and factually sufficient evidence that he failed to cooperate with treatment, placing him out of compliance with the lawful disposition order and giving the trial court proper grounds to revoke probation. The State also maintains there is legally and factually sufficient evidence to

4

support the trial court's additional findings on best interest and home environment. We agree.

### *Standard of Review*

We review juvenile modification procedures under a two-step process, first determining whether there was legally and factually sufficient evidence to support the violation finding before turning to the issue of whether the trial court abused its discretion in the disposition it ordered. *In re A.T.M.*, 281 S.W.3d 67, 70 (Tex.App.--El Paso 2008, no pet.). "When a juvenile's prior disposition is based on a finding that the juvenile engaged in a felony offense, as here, the trial court may modify the disposition and commit the juvenile to TJJD if the court finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful order of the court." *In re M.A.S.*, 438 S.W.3d 803, 806 (Tex.App--El Paso 2014, no pet.); *see also* TEX.FAM.CODE ANN. § 54.05(f)(West 2014).

In assessing the legal sufficiency of a finding, "we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it." *In re A.T.M.*, 281 S.W.3d at 71. "An appellate court will sustain a legal sufficiency or 'no-evidence' challenge if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact." *Id*. "The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id*. at 71.

"Review of the factual sufficiency requires an examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Id*. "The evidence must be so weak or the contrary

5

evidence so overwhelming that the findings should be set aside and a new trial ordered." *In re A.T.M.*, 281 S.W.3d at 71.

If we determine the evidence was legally and factually sufficient, we then review the trial court's exercise of discretion in ordering a particular disposition. *Id*. at 72. Trial courts have broad discretion "to select the appropriate form of detention for juvenile offenders, and should exercise that discretion based on the facts of each case." *In re J.R.C.*, 236 S.W.3d 870, 873 (Tex.App.--Texarkana 2007, no pet.). "The statutes do not require commitment to the [TJJD] for every probation violation; but they suggest that such placement is for serious offenders." *Id*. Our sister courts have recognized that TJJD "is the most severe form of incarceration in the juvenile justice system, and it is neither reasonable nor appropriate in the area of juvenile law to use the final, most restrictive form of detention in all situations." *Id*. Nevertheless, "a trial court is not required to exhaust all possible alternatives before committing a juvenile to the TJJD" and may "decline third and fourth chances to a juvenile who has abused a second chance." *In re M.A.S.*, 438 S.W.3d at 807. No abuse of discretion occurs so long "as some evidence of substantive and probative character exists to support the trial court's decision." *Id*.

### *Analysis*

At the outset, we again note that Appellant does not dispute that he violated the terms of his probation. Rather, Appellant argues that there is legally and factually insufficient evidence to support the mandatory, affirmative findings the trial court made as required by TEX.FAM.CODE ANN. § 54.05(m)(1)(A-C). When the trial court commits a juvenile to TJJD, it must include findings in its order that:

(A) it is in the child's best interests to be placed outside the child's home;

6

(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and

(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation[.]

TEX.FAM.CODE ANN. § 54.05(m)(1)(A-C).

The inclusion of these specific findings creates a record for the appellate courts and allows us to review the sufficiency of the evidence underpinning those findings. *In re J.M.*, 287 S.W.3d 481, 489 (Tex.App.--Texarkana 2009, no pet.). Mere recitation of the statutory language is insufficient to justify the juvenile court's order; "[h]owever, statutory language supplemented by additional findings is sufficient to meet the requirements of the Texas Family Code." *Id*. at 489. "We may reverse for an abuse of discretion if the record does not support the findings." *In re E.D.*, 127 S.W.3d 860, 864 (Tex.App.--Austin 2004, no pet.).

Here, we find that there was legally and factually sufficient evidence to support each finding. First, there is evidence to show commitment outside the home is in Appellant's best interest. While at the Center, Appellant exhibited several angry outbursts, threatened staff, acted out in a sexually inappropriate manner, and possibly suffered from adrenal blackouts. Appellant also engaged in self-harming behavior several times. Martinez testified that Appellant would likely be sent to a TJJD facility specializing in sexual behavior and mental health issues. Based on this testimony, the trial court could have believed that commitment to a TJJD facility would be in Appellant's best interest.

As to the reasonable efforts to avoid removal and facilitate return home finding in subsection B, the record shows Appellant previously resided at the Hector Garza Center for six months, where staff attempted to rehabilitate Appellant. Compliance with treatment would have

allowed Appellant to serve the remainder of his probation time at home. However, during his time at the Center, Appellant failed to comply with the Center rules, acted out aggressively toward staff, and ultimately refused to comply with treatment as ordered by the court. There is legally and factually sufficient evidence to show the trial court attempted to facilitate Appellant's return home prior to ordering TJJD commitment.

Finally, the trial evidence places the ability of Appellant's parents to adequately supervise Appellant into doubt, thereby supporting the "quality of care and level of support and supervision" finding required by subsection C. The record shows that Appellant's mother was either unable or unwilling to care for Appellant upon his release from the Center, and that although Appellant's father offered to care for Appellant if released into home custody, Appellant and his father had a contentious relationship, and Appellant had previously leveled abuse allegations against his father. Hughes testified that Appellant's behavior actually became worse once he found out he would be going to live with his father. Appellant has also displayed conflicting attitudes about rehabilitation. He testified at the hearing that he wanted to go home and would make efforts to comply with probation conditions, but his counselor testified he voluntarily refused to comply with the Center rules. Given Appellant's history of failing to comply with authority and the nature of the family relationships here, there is legally and factually sufficient evidence to support the trial court's finding that Appellant could not obtain proper supervision at home.

Appellant argues that even if the evidence is sufficient to support the findings, the trial court nevertheless abused its discretion by failing to order a less restrictive alternative to incarceration. "However, a court is not required to consider alternative dispositions in a modification hearing." *In re A.T.M.*, 281 S.W.3d at 72 (interpreting TEX.FAM.CODE ANN.

8

§ 54.05(f)).  Here, there is legally and factually sufficient evidence to support the trial court's findings, and Appellant's repeated failure to comply with treatment made the trial court's exercise of discretion reasonable.  *See In re O.M.*, No. 03-05-00165-CV, 2006 WL 3040797, at *3 (Tex.App.--Austin Oct. 25, 2006, no pet.)(mem. op.)(trial court did not abuse discretion in ordering TYC commitment based on continued delinquency and repeated probation condition violations).  Because we find that the evidence supporting the findings was legally and factually sufficient, and because we find no indication from the record that based on these findings the trial court abused its discretion in ordering Appellant's commitment to TJJD, the trial court's disposition order will stand.

Issue Three is overruled.  The trial court's judgment is affirmed.


April 29, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.