

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00174-CV

---

**IN THE MATTER OF J.R.D., A CHILD, APPELLANT**

On Appeal from the County Court at Law No. 2
Potter County, Texas
Trial Court No. 11133-2-JV, Honorable Walton Weaver, Presiding

June 22, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant J.R.D.,[1] a juvenile, was placed on probation in July of 2019. After J.R.D.'s probation was twice modified by agreement, the State filed a motion to modify a third time in May of 2021, alleging that J.R.D. had violated a term of his probation. The trial court granted the motion and committed J.R.D. to the Texas Juvenile Justice Department (TJJD). J.R.D. filed this appeal. We affirm.

---

[1] To protect his privacy, we will refer to appellant by the initials J.R.D. *See* TEX. R. APP. P. 9.8(c)(2).

BACKGROUND

In July of 2019, J.R.D. admitted and stipulated that he had committed indecency with a child by contact, a second-degree felony. J.R.D. was twelve years old. The juvenile court adjudicated J.R.D. delinquent and in need of rehabilitation, placed him on probation until age eighteen, and placed him in the care and custody of the Residential Programs of the Youth Center of the High Plains. J.R.D. was unsuccessfully discharged from the Youth Center in January of 2020. The discharge report indicated that he was discharged for "disruptive/aggressive behavior." The parties agreed to modify disposition and J.R.D. was placed in the care and custody of Pegasus Schools, Inc. In August of 2020, J.R.D. was unsuccessfully discharged from Pegasus. The discharge report stated that he did not participate in treatment and that he engaged in high-risk behaviors that were not safe for him or others. The parties again agreed to a modification. J.R.D. was placed at the Lubbock County Juvenile Justice Center. One of the rules for J.R.D.'s probation provided that he must successfully complete the program and not be discharged as unsuccessful. However, J.R.D. was unsuccessfully discharged from the Lubbock County facility in April of 2021.

The State filed a motion to modify disposition in May of 2021, alleging that J.R.D. had violated a term of his probation by failing to successfully complete the program at the placement facility and being unsuccessfully discharged. At the hearing on the State's motion, appellant contested modification, pleading "not true" to the State's allegation.

The trial court heard evidence, including testimony from J.R.D., his father, and his juvenile probation officer. J.R.D.'s juvenile probation officer testified that J.R.D. was

discharged from the Youth Center of the High Plains due to his failure to make progress in the program, failure to comply with the rules, and aggressive and destructive behavior. J.R.D. was also referred to her office for additional criminal conduct, including aggravated assault of a public servant and harassment of a public servant, while he was at the Youth Center. Those cases were not prosecuted. She further testified that J.R.D. was discharged from his next placement, Pegasus, for minimal participation in treatment, sexually inappropriate behavior, and assaults on staff and peers. After J.R.D. was unsuccessfully discharged from Pegasus, the officer discussed with J.R.D. his placement at the Lubbock facility and his need to succeed there. She warned J.R.D. that if he did not successfully complete the program at Lubbock, he would be sent to TJJD. While at the Lubbock facility, J.R.D. failed to make progress in his sex offender treatment program; engaged in aggressive, destructive behavior, such as promoting fights and destroying property; failed to follow the facility's rules; and disrupted his peers' treatment, among other things. He was unsuccessfully discharged from the program. The officer testified that two other facilities had since been contacted, but both declined to admit J.R.D. She recommended that J.R.D. be placed in the care and custody of the TJJD.

J.R.D. testified that he generally followed the rules at the Lubbock facility, but admitted to starting fights and to interfering with the treatment or progress of other children at the facility. He testified that he was a victim of sexual assault but that he did not receive treatment or counseling for it. J.R.D. believed it was unfair to be discharged from the Lubbock facility because he did not receive the help he needed.

3

J.R.D.'s father testified and asked the trial court to consider placing J.R.D. with him.[2] He stated that he could provide for J.R.D. and take him to necessary appointments, and that he would notify law enforcement if J.R.D. failed to comply with applicable rules.

The trial court found that the State's allegation that J.R.D. was unsuccessfully discharged from the Lubbock facility was "true." The trial court then modified disposition, committing J.R.D. to the TJJD.

## STANDARD OF REVIEW

The trial court's decision to modify a juvenile's disposition to commit him to the TJJD is discretionary and subject to review for an abuse of discretion. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004). A trial court does not abuse its discretion if some evidence supports the decision. *In re J.M.*, 287 S.W.3d 481, 486 (Tex. App.—Texarkana 2009, no pet.). Thus, whether there is factually sufficient evidence to support the trial court's findings is a relevant consideration in determining whether the trial court abused its discretion. *Id.*

## DISCUSSION AND ANALYSIS

J.R.D. argues on appeal that the trial court abused its discretion because there was insufficient evidence to support his commitment to the TJJD. Modification of a juvenile disposition by the juvenile court is governed by section 54.05 of the Texas Family

---

[2] The parental rights of J.R.D.'s father have been terminated and J.R.D. was living with his adoptive parents, who are his paternal grandparents, prior to the events giving rise to this case.

Code.[3]  A juvenile court may modify its original disposition in a juvenile justice proceeding and commit the juvenile to TJJD if (1) the juvenile was originally found to have committed a felony, and (2) after a hearing to modify the disposition, the court finds that the juvenile violated a reasonable and lawful court order.  TEX. FAM. CODE ANN. § 54.05(f); *In re J.P.*, 136 S.W.3d at 630.  A juvenile court that commits a child to TJJD is required to include in its order a determination that (1) it is in the juvenile's best interest to be placed outside the home; (2) reasonable efforts were made to prevent or eliminate the need for the juvenile's removal from the home and to make it possible for the juvenile to return home; and (3) in his home, the juvenile cannot be provided the quality of care and the level of support and supervision that he needs to meet the conditions of probation.  TEX. FAM. CODE ANN. § 54.05(m)(1).

J.R.D. does not challenge the trial court's finding that he violated a reasonable and lawful court order, nor does he challenge the requisite findings found in section 54.05(m).  Instead, he asserts that there was no evidence to support the trial court's findings that TJJD has the services needed to meet his educational needs, that he would receive individual counseling and group therapy at TJJD, that he lacked parental controls for placement at home, and that he has a rebellious attitude toward his parents.

Our review of the record shows that the evidence supports the requisite findings under section 54.05(m)(1).  First, the probation officer testified that J.R.D. needs inpatient treatment.  According to her, TJJD was an appropriate placement because the

---

[3] J.R.D.'s brief refers us to section 54.04(i) of the Texas Family Code, but the applicable section is 54.05(m), because this is a modification proceeding.  *See* TEX. FAM. CODE ANN. § 54.04(i) (requiring findings in original disposition of juvenile delinquency charge), § 54.05(m)(1) (requiring findings in proceeding to modify disposition).

5

seriousness of J.R.D.'s criminal offense requires that he be in a secure facility receiving treatment, being held accountable for his behavior, and receiving therapy. This evidence supports a finding that a placement outside the home is in J.R.D.'s best interest. Second, the evidence shows that efforts were made to avoid removing J.R.D. from his home. Again, the nature of J.R.D.'s offense and his need for rehabilitation necessitated his removal from the home. J.R.D. was sent to three different treatment facilities and was unsuccessfully discharged from each one. The officer testified that if J.R.D. had refused to comply with sex offender treatment while in these placements, it was unlikely that he would comply at home. Thus, the evidence indicated that disposition in the home would not be successful in rehabilitating J.R.D. The trial court may "decline third and fourth chances to a juvenile who has abused a second one." *In re J.P.*, 136 S.W.3d at 633. Finally, the evidence also supports the finding that, in his home, J.R.D. cannot be provided the quality of care and the level of support and supervision that he needs to meet the conditions of probation. The probation officer testified that J.R.D. had been provided every service available but persisted in program noncompliance and violent, aggressive behavior. She testified that J.R.D. needed to be in a strict, secure environment. Because J.R.D. failed to complete sex offender treatment and the victim of his sex offense was a family member, sending him home was not a safe option.[4] *See, e.g., In re B.M.*, No. 02-07-00153-CV, 2008 Tex. App. LEXIS 751, at *8–9 (Tex. App.—Fort Worth Jan. 31, 2008, no pet.) (mem. op.) (per curiam) (no abuse of discretion to commit juvenile to Texas Youth Commission in case where parents' homes did not provide necessary safety and security

---

[4] The victim of J.R.D.'s adjudicated offense was a cousin. The trial court also heard evidence of an additional, unadjudicated sexual offense against another family member, who lived in J.R.D.'s household.

because victims of juvenile's crimes lived at mother's residence and juvenile had committed sexual offense in father's home as well).

Viewing the evidence in a light most favorable to the trial court's findings, we conclude the evidence is sufficient to support those findings. *See In re J.D.P.*, 85 S.W.3d 420, 428–29 (Tex. App.—Fort Worth 2002, no pet.) (finding evidence supported findings for commitment to Texas Youth Commission where juvenile had history of non-compliance, alternatives to commitment had been tried and failed, and experts recommended commitment). J.R.D. has not demonstrated that the trial court abused its discretion in committing him to TJJD. Therefore, we overrule J.R.D.'s sole issue.

## CONCLUSION

We affirm the order of the juvenile court.


Judy C. Parker
Justice