**In the Matter of J.S.**

**No. 04–98–00407–CV.**

Court of Appeals of Texas,
San Antonio.

April 30, 1999.

Jacob Bruce Henry, San Antonio, for Appellant.

Alan E. Battaglia, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

J.S., appellant, appeals the juvenile court's order of disposition committing him to a term of four years to the Texas Youth Commission ("TYC"). In its original petition, the State alleged J.S. engaged in delinquent conduct, specifically, aggravated sexual assault of a child. J.S. entered a plea of true to the offense charged. Appellant raises two issues on appeal. First, he asserts the trial court abused its discretion in removing him from his home and committing him to TYC. Second, he asserts that no evidence exists in the record to support the trial court's finding of a deadly weapon. Based on our review of the record, we find that the juvenile court abused its discretion in committing J.S. to TYC. In addition, we find no evidence to support the trial court's deadly weapon finding. *See* TEX. FAM.CODE ANN. § 54.04(g) (Vernon 1996).

### Standard of Review

To commit a juvenile to TYC, a juvenile court shall include in its order that

(1) it is in the child's best interest to be placed outside his or her home; (2) reasonable efforts were made to prevent or eliminate the need for removal; and (3) while in the home, the child cannot be provided the quality of care and level of support and supervision that he or she needs to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i) (Vernon 1996); *In the Matter of M.S.*, 940 S.W.2d 789, 791 (Tex. App.—Austin 1997, no pet.). In a juvenile case, the trial court possesses broad discretion in determining the suitable disposition of a child who has been adjudicated to have engaged in delinquent conduct. *In the Matter of A.S.*, 954 S.W.2d 855, 861 (Tex.App.—El Paso 1997, no writ). Absent an abuse of discretion, we will not disturb the findings of the juvenile court. *In the Matter of K.L.C.*, 972 S.W.2d 203, 206 (Tex.App.—Beaumont 1998, no pet.). Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 481 (Tex.App.—Austin 1997, no writ). In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence in the case, and set aside the judgment and remand for new trial, only where we conclude the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In the Matter of K.L.C.*, 972 S.W.2d at 206.

### Evidence

At the time of the offense, J.S. was 15 years old and resided with his mother in San Antonio. His parents had separated in 1989, and were divorced in 1995. Pursuant to the divorce decree, the parents were named as joint managing conservators, with the restriction that he could not live outside Texas. In July of 1996, appellant had been staying with his aunt who was also the step-aunt of the victim. During this stay, J.S. sexually assaulted his uncle's seven-year old son.

On February 9, 1998, a hearing was had on the State's petition to adjudicate J.S. delinquent of aggravated sexual assault. *See* TEX. FAM.CODE ANN. § 51.03 (Vernon 1996); TEX. PENAL CODE ANN. § 22.021 (West 1994). At the time of the hearing, parental custody had been modified, his father had been given legal custody of J.S., and J.S. was living with his father, stepmother, and brother in Santa Fe, New Mexico. J.S. entered a plea of true to the charge, and on February 26th a disposition hearing was had to determine whether J.S. should be placed on probation or committed to the Texas Youth Commission. After hearing testimony from appellant's father and the victim's family, the trial court ordered that J.S. be committed to TYC for four years. The court made its finding that this was an appropriate disposition based on the nature of the offense. *See* TEX. FAM CODE ANN. § 54.04(d)(3) (Vernon 1996). In addition, the trial court made the following findings:

> ... it is in the child's best interest to be placed outside of [his] home; that reasonable efforts have been made to prevent or eliminate the need for the child's removal from the home—and to make it possible for the child to return home; and the child, in the child's home cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of his probation.

*See* TEX. FAM.CODE ANN. § 54.04(f) & (i) (Vernon 1996); *In the Matter of M.J.*, 1998 WL 842661(Tex.App.—Dallas Dec.8, 1998, no pet.).

At the hearing on disposition, the court heard from appellant's father and the victim's father and mother. All agreed probation was appropriate. Appellant's father testified that J.S. had been living with him in New Mexico for almost a year. In that time, appellant had been undergoing individual, group, and family therapy. He testified that he heard positive feedback from his son as a result of therapy. He testified that as a result of therapy, J.S. had grown

in his "person, behavior, academics, responsibility, and credibility." He testified that J.S. had worked hard to address his problem. The victim's mother and father acceded to probation so long as appellant assumed responsibility for what he had done to their son. The victim's father felt appellant had undertaken this responsibility by admitting what he had done and by seeking counseling.

D. Edwina Andrade, appellant's probation officer, submitted a report and recommendation to the juvenile court. It was her recommendation that, given the structure he received in his father's home, J.S. should be placed on probation. Appellant also testified. He stated he was "deeply sorry" for what he had done, and would not end counseling until his counselor saw fit. He testified that therapy had helped him to see his offense and "prevent it from happening again." He pointed to his ability to write to the victim's mother, and communicate his apologies. He testified he was able to do this while in therapy.

In New Mexico, appellant was enrolled in a program known as Preventive Abuse Re–Enactment, or PARE. There appellant received counseling approximately three times a week. Letters and reports submitted by appellant's counselors and therapists were included in the record before the juvenile court. According to the record, J.S. was first seen by PARE workers in late October 1996. His assessment was completed in mid-December 1996 [1] and his treatment began in January 1997. In an April 1996 letter, appellant's therapist noted that appellant was an active participant in his therapy and exhibited perfect attendance. However, the therapist also noted that his mother did not actively participate in the program despite repeated attempts by her and appellant to involve her.[2] While the initial assessment of appellant reported a strained relationship with the father, appellant's therapist noted that their conflicts had diminished.

In a letter dated September 12, 1997, the same therapist noted that appellant had "strongly committed to treatment" and worked hard to meet his treatment goals. He had admitted his offense, and expressed remorse and distress for his actions in group therapy. Furthermore, he exhibited continual improvement in his emotional and mental behavior. Once again, however, the absence of his mother in family treatment was a concern. The therapists noted that "regular involvement of family members is crucial to address the problem of sexual offending." Appellant's mother, however, had refused to participate.

In a January 1998 letter, PARE therapists stated that appellant's mother had recently begun to participate on a regular basis. Moreover, they indicated that appellant had exhibited significant improvement. However, they advised that there could be a risk of re-offending unless appellant met "treatment goals and fully complete[d] PARE program." This same advisory had been noted in the April 1997 letter. A variation of the same concern was evident in a February 1998 letter, in which PARE therapists stated their belief that "if the parents address[ed][the] serious issues at hand, risk offending [would] continue to decrease." From the record, it appears that appellant was still in therapy at the time of his adjudication and disposition hearings.

1. In their initial assessment, PARE therapists noted that appellant had been abused and neglected while living with his mother. He stated he had been abused by two of his mother's former boyfriends. In the past, his mother had left him and his little brother at home alone in the evenings when she went to work. It was also made known that both of appellant's natural parents had abused alcohol and drugs. However, at the time of his assessment, his father had been sober for four years. Appellant's mother still abused alcohol. In addition, she had also been convicted of possessing marijuana, and served jail time for the offense.

2. It is unknown from the record whether appellant's mother lived in New Mexico or Texas while he was in therapy.

## Analysis

In his first issue, J.S. asserts that the evidence before the court was insufficient to support the trial court's decision to remove him from his home. Given the lack of evidence, he contends that the trial court abused its discretion in committing him to TYC. Alternatively, the State argues that sufficient evidence existed in the record to support the trial court's order of disposition. The State points to the fact that appellant committed an offense which the Texas Legislature has seen fit to treat as so serious as to warrant a determinate sentence of 40 years. *See* TEX. FAM.CODE ANN. §§ 53.045(a)(4) and 54.04(d)(3) (Vernon 1996). Second, they assert that appellant admitted to therapists that he had sexually assaulted children left in his care before. Finally, the State points to the lack of parental supervision, incarceration, and unwillingness to participate in appellant's rehabilitation and therapy.

While we agree with the State's restatement of the evidence, we disagree with its reliance on this evidence in light of the fact that such evidence stemmed from a time period in which appellant was living with his mother, the same time at which the offense occurred. A review of the record reflects that appellant was living with his father for over a year in New Mexico prior to the hearings on adjudication and disposition. During that time, at his father's initiative, appellant attended individual, group, and family counseling three times a week. Moreover, appellant's father actively participated in his son's therapy. Appellant's progress was noted by counselors, specifically pointing to his ability to recognize what he did wrong, communicate his offense, and express remorse for his actions. There was no evidence that appellant's father could not provide the quality of care and level of support and supervision which J.S. needed. *See In the Matter K.L.C,* 972 S.W.2d at 206 (finding the record sufficient to support the trial court's finding that K.L.C.'s parents could not provide adequate home where child was sleeping with other people while at home); *In the Matter of M.S.,* 940 S.W.2d at 792 (finding evidence sufficient where mother, with whom appellant lived with, was an alcoholic and neglectful). Nor was there evidence to suggest that appellant responded negatively to therapy, or that he resisted therapy. *See id.*(stating that M.S. maintained innocence and refused to participate in group therapy as a condition of his probation). Finally, there was no evidence J.S. had since re-offended or committed another offense since the charged offense of aggravated sexual assault. Instead, the record is replete with evidence indicating appellant's good grades, school involvement and general good character while he has been living in New Mexico with his father. And while evidence of a strained relationship existed at the beginning of J.S.'s stay with his father, from the record, it appeared that their relationship had grown closer near the time of the disposition hearing.

We do not ignore the gravity of the offense with which J.S. was charged, and the impact the sexual assault had on the victim. Neither can we ignore appellant's admission of guilt for the offense. However, we also must recognize and acknowledge the steps taken by appellant and his family, specifically his father, in facing the problem at hand and undertaking reasonable efforts to combat it. At the disposition hearing, the State recommended a four year commitment to TYC, and chose to remain silent on the issue of probation. It too, however, made the following observation of the present case, an observation which we agree with.

> [THE STATE]: I remain silent but if there ever has been a case that has shown an acceptance or at least a cooperation with counseling prior to adjudication, that is a rare thing we see in this courtroom, is a family taking over and doing something about it before they are made to do something about it. This is it. He has had pretty major intervention even prior to us filing charges. So

it has been like he has been on probation for over a year already.

Clearly, here we have a juvenile who did more than exhibit temporary remorsefulness because he was caught. He acknowledged and accepted what he did wrong. More importantly, with the help of his family, he was then placed in an environment that provided the necessary supervision and support he needed to address his problem. Appellant's first issue is sustained.

In his second issue, appellant asserts that there was no evidence to support the juvenile court's finding of a deadly weapon. The State concedes that no evidence was introduced to support such a finding. *See* TEX. FAM.CODE. ANN. § 54.04(g) (Vernon 1996). Our review of the record on adjudication reveals that the State did not assert, nor was evidence admitted to support the use of a deadly weapon by appellant. Accordingly, we reverse the juvenile court's finding of a deadly weapon.

We find that the evidence before us does not support the juvenile court's findings that placement outside of the home was in J.S.'s best interest, nor that his family failed to provide the quality of care and level of support and supervision which he needed. *See In the Matter of A.S.*, 954 S.W.2d at 862–63; *In the Matter of V.R.S.*, 512 S.W.2d 350, 354 (Tex.App.—Amarillo 1974, no pet.) (stating that the purpose of removing a child from the family environment serves not to punish, but to secure custodial care and discipline as nearly as possible to that which a parent should provide). We find that the trial court's finding is against the weight and preponderance of the evidence so as to be manifestly unjust. Therefore, we find that the juvenile court abused its discretion in committing appellant to TYC. Accordingly, we remand for a new hearing on disposition.

Dissenting opinion by: TOM RICKHOFF, Justice.

TOM RICKHOFF, Justice, dissenting.

I respectfully dissent. We are not judges. Finding a more reasonable resolution is not sufficient reason to overturn this sentence, "the mere fact that a trial judge may decide a matter within {her] discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators Inc.*, 701 S.W.2d 238 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Rather, the correct test is whether the trial court acted without reference to any guiding rules and principles. *Id.* (quoting Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex. Comm. App. 1939, opinion adopted)).

Here a fifteen-year-old sexually assaulted a seven-year-old child, and admitted assaulting other children in his care. Reasonable minds could certainly disagree about whether this child has the potential to become a pedophile, or something worse, and about whether probation with therapy or a stint in TYC is necessary to arrest his fixated and deviant impulses. This is especially true in light of the fact that J.S.'s father is only four years sober and the mother is still struggling to overcome substance abuse; also, as the state notes, J.S. could have been given a forty-year determinate sentence. Because the majority does not permit this trial judge the latitude she is due, I respectfully dissent.