**AFFIRM; and Opinion Filed May 22, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00055-CV

## IN THE MATTER OF J.M., A MINOR

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JD-79164-X**

## OPINION

Before Justices Fillmore, Evans, and Lewis
Opinion by Justice Lewis

J.M. appeals the trial court's judgment adjudicating her a child engaged in delinquent conduct. In a single issue, she contends the trial court abused its discretion by ordering her placed in the custody of the chief probation officer for placement at New Life Center. We affirm the trial court's judgment.

### Background

J.M. was sixteen years old when she entered the juvenile justice system. Her mother called police after J.M. threatened her older brother with a knife and said she wanted to kill him. She was initially charged with aggravated assault; that charge was reduced to a misdemeanor charge of making a terroristic threat. J.M. entered a plea of true, and the trial court found her to be a child engaged in delinquent activity.

At the disposition hearing, the State offered J.M.'s psychological evaluations and predisposition reports. In those reports J.M. conceded that she had not been enrolled in school for some time, and testing revealed her to function at below-average levels in all subjects. J.M. reported that her mother took her out of high school after the ninth grade because J.M. was being "continually harassed by her peers." J.M. told the interviewer that she did not even attempt to interact with her classmates. She related an incident that occurred when she was fifteen, when—frustrated with what she saw as parental misunderstanding—she "stood in the middle of the street waiting to be struck by a car." Her father found her and brought her home; she said she had not felt suicidal since then. The reports described J.M.'s history of aggressive behavior, including starting a fire in an ant hill. J.M. also related that she routinely suffered from both auditory hallucinations and visual hallucinations including auditory hallucinations during one of her psychological interviews. She spoke of experiencing mood swings, and she exhibited signs of depression. She admitted she tortures the family dog. The reports indicate her mother and brother are both diagnosed with schizophrenia and bipolar disorder and that J.M. was diagnosed as having "Psychosis and Major Depressive Disorder with psychotic features," for which "[s]hort-term placement was recommended."

Maury Sauls, the court judicial liaison, testified at the disposition hearing on behalf of J.M.'s assigned probation officer. Based on the reports in evidence, Sauls testified J.M. was in need of rehabilitation and that the protection of the public as well as J.M. required that disposition be made. He relayed the recommendation of the juvenile department: that J.M. be placed on probation for a period of one year, in the custody of the chief probation officer for placement at the New Life Center. He agreed that probation in her home was "not an option" because J.M. needed residential treatment, with constant supervision and a therapist at hand.

J.M., in turn, offered the report from her Initial Psychiatric Consultation with Doctor Ayo Afejuku. The doctor concluded J.M. did not require medication at that time because her mental status and functioning were stable. However, Afejuku's "Diagnostic Impressions" indicated J.M. displayed Anxiety Disorder, Social Anxiety Disorder, Psychosis, Major Depressive Disorder with psychotic features, and Conduct Disorder. Afejuku recommended "consistent treatment providers" as well as individual therapy.

The evidence was consistent in recommending a structured environment and therapy for J.M. Where the placement issue was raised, the reports recommended J.M. be placed away from her parents' home. Nevertheless, rather than make a disposition immediately, the trial court suspended J.M.'s hearing, allowing her to return home for a thirty-day trial period.

When the disposition hearing resumed, the State offered J.M.'s updated predisposition reports. These reports indicated J.M. had been participating in the Youth Advocate Program, and her advocate mentor was pleased with J.M.'s compliance with the program. However, the reports also indicated that J.M. had failed to abide by her curfew consistently and that her parents were not cooperating with services related to family therapy sessions provided by J.M.'s mentor. The reports also noted J.M. had failed to attend school every day, although the primary attendance issue appears to have been related to violation of school rules concerning hair styles. Finally, the report states that J.M.'s mother failed to take J.M. to Dallas Metro Care for completion of a recommended mental health evaluation. (J.M. actually missed a day of school when she unsuccessfully attempted to attend the appointment without her mother.)

The State also called J.M.'s probation officer, Billy Middleton to testify. He discussed all the observations made in the predisposition reports, and he testified to the department's recommendations for J.M. as follows:

> The Juvenile Department finds that reasonable efforts have been made to maintain the subject at home; however, the subject's rehabilitation needs are greater than what can be provided in the home.
>
> The subject warrants placement in New Life Program where her level of care will be specialized in the needs of individual and group therapy, as well as sufficient consequences for aggressive behavior will be addressed in a well-structured and supervised environment. Her family should be involved in all relevant interventions.
>
> It is respectfully recommended the subject be assigned to Progressive Sanction Level 4 and placed on probation for a period of one year in the custody of the Chief Probation Officer for placement at New Life.

Middleton testified that J.M.'s academic needs could be met with this placement and that both group and individual therapy would be available to her. He stated that all reasonable efforts had been made to keep her in her parents' home and that reasonable efforts would be made to return her home as soon as possible. However, it was his opinion that she could not be given the quality of care and level of support she needed at home at that time.

J.M. called her parents to testify. Her mother testified that she had seen improvement in J.M.'s behavior and that J.M. was complying with her curfew with only five-to-ten minute violations. Her father also testified that he saw improvement in J.M.'s behavior. He stated he would supervise J.M. and would be sure she got to school and to medical appointments. Both parents asked the court to allow J.M. to stay at home with them.

The trial court concluded remaining in her parents' home was not in J.M.'s best interest. The court found she was in need of rehabilitation and that her protection—and the protection of the public—required her to be placed on a one-year probation, in the custody of the chief probation officer, for placement at New Life Center.

J.M. appeals her placement and seeks to be allowed to return to her parents' home.

**Analysis**

The single question before us is whether the trial court abused its discretion by placing J.M. away from her parents' home. Before the trial court can place a child on probation outside the child's home, the court must find: it is in the child's best interests to be so placed; reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to her home; and the child, in her home, cannot be provided the quality of care and level of support and supervision that she needs to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i)(1) (West 2014). We review a trial court's disposition of a child found to be engaging in delinquent behavior for an abuse of discretion. *In the Matter of K.E.*, 316 S.W.3d 776, 781 (Tex. App.—Dallas 2010, no pet.) ("A juvenile court has broad discretion in determining the appropriate placement for a juvenile who has been adjudicated as engaging in delinquent behavior."); *In the Matter of J.M.*, 25 S.W.3d 364, 367 (Tex. App.—Fort Worth 2000, no pet.). The test for abuse of discretion is whether the trial court acted in an unreasonable or arbitrary manner, without reference to guiding rules and principles. *K.E.*, 316 S.W.3d at 781.

In this case, the court gave J.M. a thirty-day trial period at home to determine whether that environment would allow her to receive the care she needed. There were no reports she exhibited any extreme or violent behavior during the trial period. However, there was evidence—in the form of missed curfews—that J.M.'s home environment was not sufficiently structured and supervised. There was also evidence that J.M. missed an appointment for a psychological evaluation during this trial period, and evidence her parents were not cooperating sufficiently with respect to J.M.'s treatment.[1]

---

[1] We note that the trial court expressly stated it was not considering J.M.'s school absences that were due to (a) violations of school rules concerning hair styles, or (b) J.M.'s effort to attend her psychological evaluation on her own when her mother was ill.

J.M.'s probation officer testified that J.M. needed to have a highly structured environment with consistent supervision and a therapist always present. He testified she was not able to receive the care and supervision she needed in her home.

The trial court found it was in J.M.'s best interests to be placed at the New Life Center where her educational and mental health needs could be met. The trial court further found that reasonable efforts had been made to prevent the need for J.M.'s removal from her home and to make it possible for her to return to her home as soon as possible. In the end, the court found that—if J.M. remained at home—she could not be provided the quality of care and level of support and supervision that she needed to meet the conditions of probation. *See* TEX. FAM. CODE ANN. § 54.04(c), (i)(1). Based on those findings, the trial court signed its judgment placing J.M. on probation for one year with placement at the New Life Center.

We conclude the trial court's ruling is reasonable in light of the evidence and was made in reference to the requirements of the statute. We discern no abuse of discretion in J.M.'s placement. *See K.E.*, 316 S.W. 3d at 781. We overrule her single issue.

## Conclusion

We affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

140055F.P05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF J.M., A MINOR

05-14-00055-CV

On Appeal from the 305th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. JD-79164-X.
Opinion delivered by Justice Lewis.
Justices Fillmore and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 22nd day of May, 2014.

/David Lewis/

DAVID LEWIS
JUSTICE

–7–