

## NUMBER 13-25-00405-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

### IN THE MATTER OF M.A.R. JR., A CHILD

---

### ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2
### OF VICTORIA COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Silva, Cron, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant M.A.R. Jr.,[1] a juvenile, challenges an order modifying his disposition and committing him to the Texas Juvenile Justice Department (TJJD) for an indeterminate time not to exceed his nineteenth birthday. *See* TEX. FAM. CODE §§ 54.04013, 54.05(f). He argues by one issue that there was legally and factually insufficient evidence to support the juvenile court's finding that reasonable efforts were made to prevent or

---

[1] We refer to appellant by his initials in accordance with the Texas Family Code. *See* TEX. FAM. CODE § 56.01(j).

eliminate the need for him to be removed from his home. *See id.* § 54.05(m)(1)(B). We affirm.

## I. BACKGROUND

On April 19, 2023, the State filed a petition alleging that M.A.R. Jr., then twelve years of age, had engaged in delinquent conduct by committing the felony offense of obstruction or retaliation. *See* TEX. PENAL CODE § 36.06. The petition stated that the child's grandmother is his legal guardian. On October 5, 2023, the juvenile court rendered an "Order of Adjudication and Disposition" finding the State's allegation true and placing M.A.R. Jr. on probation in the custody of his grandmother until his eighteenth birthday or until further order of the court. *See* TEX. FAM. CODE §§ 54.03(f), 54.04(d)(1)(A).

The State moved to modify the disposition on May 6, 2024, alleging that M.A.R. Jr. violated conditions of his probation by, among other things: (1) committing four new criminal offenses, (2) failing to attend school, (3) failing to obey his school's rules and regulations, and (4) causing bodily injury to a teacher. In a June 13, 2024 order, the juvenile court found these allegations true and placed M.A.R. Jr. in the custody of the Victoria Regional Juvenile Justice Detention Facility (the post-adjudication facility) until his eighteenth birthday or until further order of the court. *See id.* § 54.05(f). The order stated that "reasonable efforts have been made to prevent or eliminate the need for the child to be removed from his or her home." *See id.* § 54.05(m)(1)(B). It specifically noted that "[t]he child and/or family was previously referred to the following community, court, or educational programs: Community Service Restitution [and] Delinquent Conduct Supervision"; and "[t]he child and/or family was previously referred to the following counseling or psychological services: South Texas Psychiatry [and] Victoria Counseling."

2

On February 7, 2025, the State filed another motion to modify disposition, alleging that M.A.R. Jr. violated the conditions of his probation in that he "was unsuccessfully discharged from the Victoria Regional Juvenile Justice Center Post-Adjudication Program." The motion contended that, from September 2024 to January 2025, M.A.R. Jr. incurred "a total of 350 minor incident reports and 46 major incident reports" at the post-adjudication facility and was "a serious threat to facility safety, and security."

On April 10, 2025, M.A.R. Jr.'s counsel filed a "Motion to Determine Lack of Responsibility for Conduct as a Result of Mental Illness or Intellectual Disability." *See id.* § 55.51(a) ("A child alleged by petition to have engaged in delinquent conduct . . . is not responsible for the conduct if at the time of the conduct, as a result of mental illness or an intellectual disability, the child lacks substantial capacity either to appreciate the wrongfulness of the child's conduct or to conform the child's conduct to the requirements of law."). The motion noted that M.A.R. Jr. has been diagnosed with autism, generalized anxiety disorder, depressive disorder, and attention-deficit/hyperactivity disorder (ADHD). The court ordered Danielle Todaro, Psy.D., a psychologist, to perform a forensic mental examination. *See id.* § 55.51(b) ("On a motion by a party in which it is alleged that a child may not be responsible as a result of mental illness or an intellectual disability for the child's conduct, the court shall order the child to [undergo a forensic mental examination]."). Todaro examined M.A.R. Jr. and filed a report with the juvenile court on June 18, 2025, concluding in part that the child "meets criteria for diagnoses of [Disruptive Mood Dysregulation Disorder] and ADHD, Combined Presentation" but that his "ability to reason was not so impaired by his mental health conditions that he did not appreciate the wrongfulness of [his] acts."

3

At an evidentiary hearing on July 10, 2025, M.A.R. Jr.'s probation officer testified in support of the allegations in the State's motion, and M.A.R. Jr.'s father testified that he was willing to take custody. Afterward, the juvenile court found the allegations in the State's second motion to modify true, concluded that placement with the father was not viable, and modified the disposition to commit M.A.R. Jr. to TJJD for an indeterminate period of time not to exceed his nineteenth birthday. *See id.* § 54.04013 ("Notwithstanding any other provision of this code, after a disposition hearing held in accordance with [§] 54.04, the juvenile court may commit a child who is found to have engaged in delinquent conduct that constitutes a felony offense to [TJJD] without a determinate sentence if the court makes a special commitment finding that the child has behavioral health or other special needs that cannot be met with the resources available in the community."). The order reiterated the court's finding that "reasonable efforts have been made to prevent or eliminate the need for the child to be removed from his/her home." *See id.* § 54.05(m)(1)(B). The court then issued findings of fact, including the following:

9.    The Court finds that the Child was fit to proceed with the hearing as indicated by Dr. Todaro's Psychological Evaluation.

10.   The Court finds that the Child does have some mental health conditions, but that he was not so impaired by his mental health conditions that he did not appreciate the wrongfulness of his conduct. The Court further finds that the Child was capable of conforming his actions to the requirements of the Conditions of Probation and chose not to do so. It should be noted that the Child's attorneys did not object to the results of Dr. Todaro's report on her psychological evaluation and did not further urge the mental health conditions as a defense to whether the Child violated the Conditions of Probation. The Court reviewed the Psychological Evaluation for these issues alone for the first part of the hearing to determine whether the Child had violated the Conditions of Probation as alleged in the State's (Second) Motion to Modify Disposition and to determine if the Child was fit to proceed with the hearing.

11.   The Court finds in the second part of the hearing that the Victoria

4

County Juvenile Probation Department has exhausted all local resources in an attempt to rehabilitate the Child and to make it possible for the Child to return to his home.

12. The Court finds that releasing the Child to the custody of his biological father, who is not the legal guardian of the Child, is not a viable option and that the protection of the Child and the public and the rehabilitation of the Child would not be served by such placement.

13. The Court finds that at this time, the only option for placement of the Child is in the custody of the [TJJD] due to the needs of the Child.

The court concluded that M.A.R. Jr. "has behavioral health needs and other special needs that cannot be met with resources available in this community." *See id.* § 54.04013. The court also again concluded, among other things, that "reasonable efforts have been made to prevent or eliminate the need for the Child to be removed from his home." *See id.* § 54.05(m)(1)(B).

This appeal followed. *See id.* § 56.01(h) (providing that an appeal of an order which "takes custody of the child from the child's parent, guardian, or custodian" "has precedence over all other cases").[2]

## II. DISCUSSION

### A. Applicable Law and Standard of Review

The Juvenile Justice Code, codified in Title 3 of the Texas Family Code, governs all proceedings in cases involving the delinquent conduct of children. *In re J.G.*, 495 S.W.3d 354, 362 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing TEX. FAM.

---

[2] On August 14, 2025, M.A.R. Jr. filed an "Unopposed Motion to Confirm Notice of Appeal as Timely Filed and/or . . . to Extend the Time for Filing Notice of Appeal." We granted the motion to the extent it sought confirmation that the notice of appeal was timely filed. We observed that, although the Juvenile Justice Code provides that this appeal "has precedence over all other cases," the timelines for accelerated appeals under the Texas Rules of Appellate Procedure did not apply because the statute does not explicitly require the appeal "to be accelerated or expedited." *See* TEX. R. APP. P. 28.1(a) (defining what types of appeals are subject to accelerated timelines).

CODE §§ 51.01–61.107). The statute permits a trial court to modify a juvenile's disposition and commit the juvenile to TJJD when: (1) the prior disposition was based on a finding that the juvenile engaged in a felony offense; and (2) after a hearing, the trial court finds by a preponderance of the evidence that the juvenile "violated a reasonable and lawful order of the court." TEX. FAM. CODE § 54.05(f); *see In re C.J.B.*, 463 S.W.3d 626, 630–31 (Tex. App.—El Paso 2015, no pet.). When committing a juvenile to TJJD, the trial court must include in its order a determination that:

(A)     it is in the child's best interests to be placed outside the child's home;

(B)     reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and

(C)     the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

TEX. FAM. CODE § 54.05(m)(1).

A trial court has broad discretion to determine a suitable disposition for a juvenile found to have engaged in delinquent conduct, particularly in proceedings involving modification. *In re K.H.*, 682 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2023, pet. denied); *see In re J.P.*, 136 S.W.3d 629, 633 (Tex. 2004). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *In re K.H.*, 682 S.W.3d at 575. No abuse of discretion occurs if some evidence of a substantive and probative character supports the trial court's findings, even if there is conflicting evidence. *In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.). However, a juvenile court abuses its discretion if it commits a child to TJJD in the absence of evidence to support the findings required by § 54.05(m)(1). *In re E.K.G.*, 487 S.W.3d 670, 675–76 (Tex. App.—San Antonio 2016, no pet.).

6

Here, M.A.R. Jr. challenges the sufficiency of the evidence supporting the juvenile court's finding under § 54.05(m)(1)(B). "[L]egal and factual sufficiency review of the trial court's fact findings are relevant factors within the abuse of discretion standard applied to disposition orders." *In re E.K.G.*, 487 S.W.3d at 676. Evidence is legally insufficient to support a disputed fact finding if: (1) evidence of a vital fact is absent, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Evidence is factually insufficient if, in light of all the evidence, the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re A.T.M.*, 281 S.W.3d 67, 71 (Tex. App.—El Paso 2008, no pet.); *see In re T.L.H.*, No. 11-23-00071-CV, 2025 WL 51811, at *3 (Tex. App.—Eastland Jan. 9, 2025, no pet.) (mem. op.) (reviewing factual sufficiency of the evidence to support juvenile court's finding under § 54.05(m)(1)(B)); *In re K.H.*, 682 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (same); *In re B.E.E.*, 658 S.W.3d 908, 914 (Tex. App.—El Paso 2022, no pet.) (same for finding under § 54.05(m)(1)(A)). In reviewing the sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the finding, indulging every reasonable inference that would support it and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 822.

B.      Hearing

At the July 10, 2025 hearing, Sanae Davidson testified that she has been M.A.R. Jr.'s juvenile probation officer since August 22, 2024, when he started at the post-

7

adjudication facility. She said that, before the initial adjudication order in October 2023, M.A.R. Jr. was on "deferred probation" for the obstruction or retaliation charge from July 20 to September 21, 2023. However, he was "unsuccessfully terminated" due to his "school behaviors and failure to comply with his deferred agreement."[3] Between 2022 and 2024, her office received eleven referrals indicating M.A.R. Jr. engaged in criminal conduct, including making terroristic threats, possession of a controlled substance, criminal mischief, resisting arrest, criminal trespass, aggravated assault of a public servant, and unlawful carrying of a weapon. She testified that he threatened to kill school staff members and stabbed two of them with a pencil. He was in detention at the time of the hearing.

Davidson testified that the Victoria County post-adjudication program is usually nine months long, but M.A.R. Jr. was "unsuccessfully discharged" after only five months because of his "failure to participate in the program." She said he was "given accommodations for his treatment" and "pass[ed] the majority of his classes," but failed to progress beyond Level 1 out of nine levels in the program. Relatedly, M.A.R. Jr. incurred nearly four hundred "incident reports" during his five months at the facility, which is "above average." The reports indicated that M.A.R. Jr. engaged in the following behaviors at the facility: "being disrespectful to staff and peers, destroying facility property, failing to participate in [the] program, threatening staff, becoming aggressive towards staff and peers, attempting to self-harm by tying fabric around his neck, flooding his cell, and then making inappropriate sexual comments towards female staff." Davidson

---

[3] The record does not contain any agreement or order regarding deferred prosecution, disposition, or adjudication.

explained that, at the request of the juvenile court, M.A.R. Jr. underwent psychological examinations on May 10 and November 19, 2024, "as an attempt for us to see what other options we had to help [him] while he was in [the post-adjudication] program." After the second examination, M.A.R. Jr.'s individual counseling was "intensif[ied]" and his medication was altered. During the course of Davidson's participation in the case, four reviews were held before the juvenile court, but M.A.R. Jr. "continued to make no progress."

Davidson recommended that M.A.R. Jr. be placed in TJJD's custody so that he "is able to receive the intensity of services that he cannot be provided with in the community." She also agreed that "reasonable efforts were made to prevent or eliminate the need for his removal from his home to make it possible for him to return to his home." When asked to detail some of those efforts, she replied:

> Just specifically speaking of program-wise, he was offered that deferred prosecution probation to prevent an adjudication for this offense. He was on delinquent conduct probation, where there was failure to comply. He was seen by multiple mental health agencies, specifically the Victoria South Texas Psychiatry, Victoria Counseling. He participated in groups while in our Post[-adjudication] Program as well. However, he failed to comply with that.

On cross-examination, Davidson acknowledged that M.A.R. Jr.'s medication was changed "each month" that he was in the post-adjudication program. Moreover, she agreed that M.A.R. Jr. "started showing new symptoms that he had never shown before" in January of 2025, the same month that he was discharged from the program.[4] And she conceded that, on a percentage basis, most of the incident reports in the record were for

---

[4] According to Davidson, a psychiatrist noted M.A.R. Jr. "had the psychotic talking to self and needed constant redirection."

9

"minor" infractions.

M.A.R. Jr.'s counsel offered into evidence a report by the United States Department of Justice Civil Rights Division entitled "Investigation of [TJJD]" and dated August 1, 2024. Counsel argued that the report was admissible to demonstrate "the harsh reality, how terrible the environment is for children" at TJJD.[5] The juvenile court admitted the report over the State's relevance objection.

M.A.R. Jr.'s father testified that the best thing for his son would be for him to "be at home." He explained that the last time he had full custody of M.A.R. Jr. was "[b]efore [he] turned [him]self in and went to prison" in 2019, and he said M.A.R. Jr.'s grandmother does not allow the child to visit him. M.A.R. Jr.'s father is currently self-employed remodeling houses and lives with his cousin. He stated that, if the child was released to

---

[5] The executive summary of the report contains the following findings:

**Protection from harm:** Children in TJJD's secure facilities are often exposed to excessive physical and chemical force. Children also spend prolonged periods of time in isolation, under stark conditions and without access to adequate mental health and educational services. And children endure sexual abuse by both staff and other children. These conditions cause children serious harm and violate the Constitution.

**Mental health care:** Children in TJJD's secure facilities do not receive adequate mental health assessments, treatment planning, and counseling services. TJJD also fails to provide adequate substance use disorder treatment and treatment for children who engage in self-harm or have suicidal thoughts. TJJD's response to children's behavior exposes children to excessive force and isolation. These deficiencies in mental health services violate the Constitution.

**Special education:** Children with disabilities in TJJD's secure facilities do not receive a free appropriate public education. Special education services are not individualized to meet learning needs; fail to include specially designed instruction, behavioral supports, related services, and transition services; and are based on outdated information about children's needs. Without appropriate services, children with disabilities cannot access the general education curriculum, preventing meaningful progress. Each of these failures violates the [Individuals with Disabilities Education Act].

**Discriminating against children with disabilities:** Children with disabilities in TJJD's secure facilities do not receive reasonable modification to complete programs required for their release. Instead, children are expelled from programming due to disability-related behavior and required to repeat it, prolonging their time in TJJD's custody or resulting in their transfer to prison. TJJD also denies children with disabilities an equal opportunity to benefit from education. Both practices violate the [Americans with Disabilities Act].

his custody, he would take him to work with him that evening to "show him that there are other ways to make a living." He said that "when I say something, he knows I'm not playing with him." When the juvenile court asked whether he believed his son was mentally ill, M.A.R. Jr.'s father replied: "No. I think it's all these pills that he's been taking." He later clarified that, if the court ordered M.A.R. Jr. to go to counseling and take prescribed medication, he would make sure the child complied.

## C.    Analysis

M.A.R. Jr. contends the evidence was insufficient to establish that "reasonable efforts were made to prevent or eliminate the need for [his] removal from [his] home and to make it possible for [him] to return home." *See* Tex. Fam. Code § 54.05(m)(1)(B). His argument focuses on the evidence regarding his intellectual disabilities, and he contends that there was no reasonable effort made to identify a facility other than TJJD where he could receive adequate mental health treatment. Pointing to the Department of Justice report, he argues the evidence established that "TJJD was not the place [he] would receive the care, treatment and rehabilitation that he needed."

The State alleged M.A.R. Jr. committed the felony offense of obstruction or retaliation on or about March 6, 2023. Davidson testified that the child's adjudication regarding that offense was initially deferred, but that he was later adjudicated guilty after failing to comply with the terms of the deferral order. M.A.R. Jr. does not dispute Davidson's testimony. After adjudication, the juvenile court placed M.A.R. Jr. on probation in the custody of his grandmother on October 5, 2023. M.A.R. Jr. does not dispute that he violated the conditions of his probation as alleged by the State in its first motion to modify disposition, including stabbing a school teacher with a pencil. As a result of these

11

violations, M.A.R. Jr. was removed from his grandmother's home and placed in the Victoria County post-adjudication facility on June 13, 2024. At that time, the juvenile court made the required finding under § 54.05(m)(1)(B) and specifically noted that M.A.R. Jr. had been provided with supervision and psychiatric counseling.

Later, the State filed a second motion to modify alleging that M.A.R. Jr. incurred hundreds of disciplinary infractions at the post-adjudication facility, including destroying property and threatening staff, and that he failed to advance beyond the first step of the program. M.A.R. Jr. does not dispute that he committed the acts alleged by the State in its second motion to modify.

A trial court is not required to exhaust "all possible alternatives" before sending a juvenile to TJJD. *In re K.H.*, 682 S.W.3d at 576. Courts have held that "reasonable efforts" were made to prevent the child's removal even when the child "was not offered any services," *see In re B.R.*, No. 02-19-00328-CV, 2020 WL 3969556, at *6–7 (Tex. App.—Fort Worth June 18, 2020, no pet.) (mem. op.), and even when probation was never attempted. *See In re A.M.C.*, No. 04-11-00116-CV, 2011 WL 6090077, at *4 (Tex. App.—San Antonio Dec. 7, 2011, no pet.) (mem. op.) (holding, "given the evidence showing a continuing and increasingly severe pattern of delinquent conduct by A.M.C. during 2010," that "the trial court had discretion to determine that TYC was the best place for A.M.C., and was not required to first exhaust the alternatives of probation and outside placement"). In *In re J.M.*, the Dallas Court of Appeals held that even though the juvenile had improved during a 30-day trial period at home, the trial court did not abuse its discretion by finding that "reasonable efforts" had been made to keep the juvenile in her home because if she remained there, she could not be provided the quality of care and

level of support and supervision that she needed to meet the conditions of probation. 433 S.W.3d 792, 794–96 (Tex. App.—Dallas 2014, no pet.); *see also In re B.R.*, 2020 WL 3969556, at *7 (noting that, although "B.R.'s behavior improved while at home," "even improved behavior is not necessarily enough" to show that commitment order was error).

Here, M.A.R. Jr.'s adjudication was initially deferred; when that failed, he was placed on probation with his grandmother; and when that failed, he was placed in a post-adjudication program. But M.A.R. Jr. squandered each of these opportunities by failing to behave in accordance with applicable laws and rules. *See In re J.P.*, 136 S.W.3d at 633 (noting the Texas Family Code "allows a trial court to decline third and fourth chances to a juvenile who has abused a second one"); *In re J.R.C.*, 236 S.W.3d 870, 875 (Tex. App.—Texarkana 2007, no pet.) (same); *see also In re B.R.*, 2020 WL 3969556, at *7 (noting that "[a]llowing B.R. to return to his mother's home pending the adjudication and disposition hearings allowed the court to see how B.R. behaved while home with her, something that can play a part in the reasonable-efforts analysis. . . . And being released to his mother's home proved helpful—it showed the court that removing B.R. was in fact necessary."). Moreover, "[g]enerally, a trial court does not abuse its discretion in rendering a commitment order when a delinquent juvenile has engaged in some type of violent activity that makes the juvenile potentially dangerous to the public." *In re W.J.P.*, No. 01-19-00988-CV, 2021 WL 2931437, at *3 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.). Stabbing a teacher with a pencil certainly fits this definition.

There is no doubt that M.A.R. Jr. suffers from serious intellectual disabilities which require supervision and treatment, but the evidence established that the intensive counseling and medication provided to him at the post-adjudication facility did not

significantly affect his behavior, and Davidson testified that TJJD would be able to provide him with "the intensity of services" which he requires. *See In re J.D.P.*, 85 S.W.3d 420, 429 (Tex. App.—Fort Worth 2002, no pet.) ("It is also clear from the record that probation, medication, alternative schools, years of weekly counseling sessions, and other types of intervention have been attempted and have had little or no effect on [a]ppellant's behavior."); *In re B.M.*, 1 S.W.3d 204, 209 (Tex. App.—Tyler 1999, no pet.) (evidence of juvenile's two previous periods of probation prior to offense at issue supported disposition placing him outside the home). On the other hand, there was no evidence of any suitable alternative placement at the time of the modification order. In particular, the trial court's conclusion that placement with the father was not feasible was supported by the father's testimony that he was in and out of incarceration during the pendency of the case, lives with his cousin, has not had custody of M.A.R. Jr. in over five years, and does not believe the child is mentally ill. *See In re M.S.*, 940 S.W.2d 789, 792 (Tex. App.—Austin 1997, no writ) (holding disposition order supported in part by evidence that "appellant's home was not an ideal environment"). Further, the record does not show that there was any facility available aside from TJJD which could provide appropriate mental health services. *See In re T.D.*, No. 12-19-00259-CV, 2020 WL 1528062, at *4 (Tex. App.—Tyler Mar. 31, 2020, no pet.) (mem. op.) (finding the evidence supported the "reasonable efforts" finding where there was "little, if any, evidence of record that indicates that an alternative secure structured placement other than TJJD was available to" the juvenile).[6]

Having reviewed the record in the light most favorable to the State, we conclude

---

[6] The Department of Justice report, though disturbing, has no bearing on the limited question we are presented with in this appeal: i.e., whether reasonable efforts were made to eliminate the need to remove M.A.R. Jr. from his home.

that there was legally and factually sufficient evidence to support the juvenile court's finding that "reasonable efforts were made to prevent or eliminate the need for [M.A.R. Jr.'s] removal from [his] home and to make it possible for [him] to return home." *See* TEX. FAM. CODE § 54.05(m)(1)(B). The juvenile court did not abuse its discretion in rendering its commitment order. M.A.R. Jr.'s issue on appeal is overruled.

### III.    CONCLUSION

The juvenile court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
29th day of January, 2026.